# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:16-CV-00656-GCM

| | |
|---|---|
| MICHAEL TINSLEY, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| **CITY OF CHARLOTTE,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**THIS MATTER COMES** before this Court on Defendant City of Charlotte's ("Defendant") Motion for Summary Judgment. (Doc. No. 42). Plaintiff Michael Tinsley ("Plaintiff") filed a response. (Doc. No. 46). Defendant filed a reply. (Doc. No. 51). As such, this matter is ripe for disposition.

## I. FACTUAL BACKGROUND

This case arose from the alleged discriminatory employment practices of the Defendant. Specifically, Plaintiff alleged that the Defendant discriminated against him based on his race and sex. Ultimately, according to Plaintiff, the discriminatory practices of the Defendant led to his termination from employment with the Defendant.

Plaintiff is an African-American male who served as a police officer for the Charlotte-Mecklenburg Police Department ("CMPD") from March of 1998 through August of 2013. (Compl. ¶¶4, 6, 9). Plaintiff's last assignment was in the Central Division of the CMPD until his termination in 2013. (Doc. No. 46, p. 3).

### a. Job Performance

1

Plaintiff had up and down performance reviews early in his career with the CMPD. On April 8, 1999, Plaintiff was cited for failure to show up to a directed patrol. (Pl. Dep. 41:20-25; 42:1-25, 43:1-6). On April 16, 1999, the CMPD counseled Plaintiff on the importance of having backup and performing proper building searches because of an incident that occurred on April 3, 1999. *Id.* at 44:7-17. On April 20, 1999, the CMPD cited Plaintiff for failure to secure a prisoner who attempted to escape. This incident occurred on March 1, 1999. *Id.* at 46:19-23. Again, on April 20, 1999, Plaintiff was cited for being 55 minutes late for work on April 9, 1999 and for being tardy to work on March 1, 1999. *Id.* at 46:19-23. On August 10, 2000, Plaintiff was involved in a preventable motor vehicle accident while on duty. *Id.* at 52:16-25, 53:1-18. His chain of command determined he violated a traffic law during the incident. *Id.* Plaintiff was tardy for duty on February 5, 2000. *Id.* at 54:20-25, 55:1-5. On July 1, 2000, Plaintiff was involved in another preventable motor vehicle accident while on duty. *Id.* at 56:1-5. On July 7, 2000, Plaintiff failed to show up for duty. *Id.* at 59:8-25, 60:1-14. Plaintiff provided explanations for each infraction listed above. (Doc. No. 46, p. 3).

Despite the numerous infractions on Plaintiff's record, his 2002 performance review listed several commendations that Plaintiff had received. *Id.* at 2. Additionally, several supervisors praised Plaintiff for going above and beyond the call of duty. *Id.* One such review stated "Officer Tinsley has completed a tremendous amount of work while suffering various injuries and challenges throughout the rating period. Officer Tinsley took it upon himself to address these challenges on his own and did not accept any offers of assistance from his chain of command." (Doc. No. 46-2, p. 3).

However, in 2003, the evidence on the record reveals that Plaintiff received another citation for being tardy to work on May 17, 2003. (Pl. Dep. 61:9-25, 62:1-7). On November 10,

2003, the CMPD issued a violation of the arbitrary profiling directive to Plaintiff. *Id.* at 85:8-21. Plaintiff was again cited for tardiness on July 4, 2004. *Id.* at 90:1-13. Plaintiff failed to report to work on June 22, 2005 which resulted in him receiving a citation on June 29, 2005. *Id.* at 154:22-25, 155:1-25, 156:1-25, 157:1-25, 158:1-13. On July 8, 2005, the CMPD found Plaintiff in violation of a rule of conduct due to his interference in an investigation by another officer on July 7, 2005. *Id.* at 98:1-8. On February 7, 2008, Plaintiff received a sustained complaint for rudeness and case interference. *Id.* at 107:6-10. On December 2, 2007, Plaintiff received a citation for neglect of duty. *Id.* at 128-130:1-25.

On December 11, 2011, Plaintiff received a citation for failing to report to duty. *Id.* at 151:10-25. 152:1-25. In March 2013, the CMPD cited Plaintiff for improper use of the Department's equipment. *Id.* at 170-189:1-3. Later in 2013, the CMPD suspended Plaintiff for utilizing his position as a police officer to avoid receiving a parking ticket. *Id.* at 194:11-23. Plaintiff disputes the factual basis underlying many of these citations.

Plaintiff served his last assignment for the CMPD in the Central Division under Sgt. Mentavlos. (Doc. No. 46, p. 4). Sgt. Mentavlos never issued a disciplinary citation toward Plaintiff, and he described Plaintiff as hardworking. *Id.* When describing Plaintiff as an officer, Sgt. Mentavlos stated,

> "He was definitely a go-to person for like a hit and he was really good at solving hit and runs, really good at that. So he was a go-to person for traffic. He took a lot of initiative on doing jaywalking operations and he also did a lot of work with the skateboarders who were skate boarding in the street illegally."

(Mentavlos Dep. 13:23-25, 14:1-7). Sgt. Mentavlos went on to state that Plaintiff did not have a problem with tardiness while working under his leadership. *Id.* at 50:3-9.

### b. Relationship with Aimee Aquino

Plaintiff was involved in a sexual relationship with a fellow officer named Aimee Aquino ("Aquino"). (Doc. No. 46, p. 4). According to Plaintiff, Aquino pressed Plaintiff to have more of a relationship, but Plaintiff declined. *Id.* After Plaintiff declined taking the relationship further, Aquino subjected the Plaintiff to harassing behavior. *Id.*

According to Plaintiff, Aquino harassed Plaintiff in several ways once Plaintiff refused a more serious relationship. For instance, Aquino refused to show up to certain secondary employment shifts unless Plaintiff agreed to sexual activity with her. *Id.* Additionally, Aquino would show up at Plaintiff's service calls even though the officers did not work in the same division, and officers are generally not supposed to leave their division. *Id.* at 5. In addition to arriving at service calls, Aquino would also come to Plaintiff's division office. Eventually, Plaintiff sought intervention from a supervisor. *Id.* The CMPD issued Aquino a directive on May 7, 2013 which ordered Aquino to not go to Plaintiff's division or office. *Id.*

On the same day Aquino received that directive, Aquino filed a report with the CMPD stating that the Plaintiff had raped her on April 2, 2013. *Id.* Both a criminal investigation and an internal investigation were launched against Plaintiff because of the report. *Id.* Plaintiff was charged with two internal violations at the conclusion of the internal investigation, but neither charge was sustained by the Chain of Command Review Board[1]. *Id.* at 5-6.

Sgt. Burke led the Internal Affairs investigation. *Id.* at p. 6. In conducting the investigation, Sgt. Burke spoke with both Aquino and Plaintiff. *Id.* Aquino alleged during her interview with Sgt. Burke that Plaintiff raped her on April 2, 2013. *Id.* CMPD downloaded the phone records from both Aquino and Plaintiff. *Id.* Even though Aquino alleged that Plaintiff

---

[1] The Chain of Command Review Board is responsible for reviewing decisions of Internal Affairs. Internal Affairs investigates and then makes a recommendation regarding discipline. The employee then has the option to accept the recommendation or appeal the recommendation to the Chain of Command Review Board.

raped her between the hours of 2 a.m. and 3 a.m., phone records show she was on the phone with a different person during that time period. *Id.* at 6-7. Sgt. Burke had this information at the time he recommended a rule of conduct violation for Plaintiff based on the rape charge. *Id.* at 7.

Even though the charges that were generated by the rape allegation were not sustained, Plaintiff received four additional charges as a result of the investigation. *Id.* The charges dealt with the Plaintiff's candor during the Internal Affairs investigation into the rape allegation and Plaintiff's actions as an officer that were entirely unrelated to the rape allegation and investigation. *Id.* The Chain of Command Review Board sustained each of the four new charges against Plaintiff. *Id.* at 8. Those sustained charges resulted in a 240-hour suspension, and Plaintiff being cited for termination. *Id.*

   c. **Termination**

In August of 2013, Police Chief Rodney Monroe cited Plaintiff for termination. When an officer is cited for termination, the Civil Service Board handles the review of that decision. *Id.* at 10. At Plaintiff's Civil Service Board hearing, Chief Monroe testified regarding the allegations against Plaintiff. (Doc. No. 42-5). Chief Monroe testified that even if the Board reversed his decision to terminate Plaintiff, Chief Monroe would have no use for Plaintiff as a sworn officer in the CMPD. (Doc. No. 46-15). Chief Monroe's appearance at Plaintiff's hearing was one of the first, if not the first, times that Chief Monroe had testified at a Civil Service Board hearing. *Id.* The Civil Service Board voted to terminate Plaintiff by a three to two vote. The races and genders of the three votes to terminate were: white male, black female, and white female. (Doc. No. 42-5). The races and genders of the two votes to not terminate were: black female and Hispanic male. *Id.*

   d. **Post-termination Actions**

5

In 2014, Plaintiff filed suit in the Mecklenburg County Superior Court against Aquino alleging that she slandered him by accusing him of rape. (Doc. No. 46). The jury found that Aquino had slandered Plaintiff by making the accusation that Plaintiff had raped her. *Id.* In the 2014 suit, Plaintiff sued Aquino in her individual capacity. *Id.* Defendant, however, provided Aquino with an attorney, covered her attorneys' fees, and ultimately paid the settlement to Plaintiff. *Id.*

## II.   PROCEDURAL BACKGROUND

On August 23, 2013, Plaintiff was cited for termination. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") dated February 19, 2014. The EEOC issued a right to sue letter on March 28, 2016. Plaintiff originally filed this suit in state court; however, Defendant removed the case to this Court on September 8, 2016.

## III.   STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. *Id.*

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (internal citations omitted). Once this initial burden is met, the burden shifts to the nonmoving party, which "must set forth specific facts showing that there is a genuine issue

for trial." *Id.* at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id.* at 324. Instead, "the non-moving party must present sufficient evidence such that 'reasonable jurors could find by a preponderance of the evidence' for the non-movant." *Sylvia Dev. Corp. v. Calvert Cnty., Md.,* 48 F.3d 810, 818 (4th Cir. 1995) (citing *Anderson,* 477 U.S. at 252 (1986)).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

Plaintiff sued Defendant alleging that Defendant discriminated against Plaintiff based on his race and sex in violation of Title VII of the Civil Rights Act of 1964 as amended by 42. U.S.C. §§2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"). The standard to establish race and sex discrimination cases is the same whether analyzed under Title VII or Section 1981. *See White v. BFI Waste Servs., LLC.*, 375 F.3d 288, 295 (4th Cir. 2004). Thus, the Court will analyze Plaintiff's claims together.

To prove an allegation of discrimination based on race or sex, a plaintiff may rely on either direct evidence or the *McDonnell Douglas* burden shifting framework. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Here, Plaintiff has provided no direct evidence of

discrimination on the part of the Defendant. Rather, the Plaintiff chose to proceed only based on the *McDonnell Douglas* framework.

The familiar *McDonnell Douglas* framework provides the appropriate order for production of evidence. Under this framework:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by the preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 251-52 (1981). In order to prove a prima facie case of discrimination, a plaintiff must show "(1) membership in a protected class, (2) satisfactory job performance, (3) adverse employment action, and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

Once a plaintiff properly supports a prima facie case, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Burdine*, 450 U.S. at 251-52. If the defendant successfully articulates a legitimate, nondiscriminatory reason, the burden then shifts back to the plaintiff for the plaintiff to show that the employer's stated reason is actually pretext for discrimination. *Id.* In showing pretext, it is not enough for a plaintiff to show that the employer's stated reason is false; rather, the plaintiff must also show that the true reason behind the adverse action was discrimination. *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 377 (4th Cir. 1995).

    a. **Prima Facie Case of Discrimination**

The first step of the *McDonnell Douglas* burden shifting framework requires the Plaintiff to establish a prima facie case of discrimination. This burden is not "onerous." *Burdine*, 450 U.S. at 253. The purpose of the prima facie case requirement is to eliminate the most common reasons for adverse employment actions. *Id.* at 253-54. "[T]he prima facie case raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Id.* at 254.

In this case, the Plaintiff is a member of a protected class. Plaintiff is an African American male. The Defendant, however, argues that Plaintiff cannot establish the prima facie case because Plaintiff's job performance was not satisfactory. In support of this argument, Defendant points to Plaintiff's disciplinary record which lists many infractions over the course of Plaintiff's employment with the CMPD. In response, Plaintiff argues that the Plaintiff did not commit the actions for which the CMPD disciplined him.

While it is generally true a plaintiff can establish a claim by showing that the plaintiff did not perform the acts of which he was accused[2], the plaintiff must do more than make bald assertions. A plaintiff must provide evidence that creates a genuine issue of material fact. As to this argument, the Plaintiff failed to meet this burden. Plaintiff does not argue that he did not perform the acts of which he is accused; rather, Plaintiff argues that the conduct does not constitute a violation of Department policy. For example, the CMPD cited Plaintiff for improper use of department equipment when Plaintiff ran his cousin's driver's license through the police system. Officers are prohibited from running a license through the system unless it is for a law enforcement purpose. Plaintiff admits to running the license but argues that it was for a law enforcement purpose which does not violate the policy. "[T]his court does not sit as a kind of

---

[2] *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143-45 (2000).

9

super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." *DeJarnette v. Corning Inc*., 133 F.3d 293,299 (4th Cir. 1998) (internal quotation marks and citation omitted). It is not the job of this Court to interpret the Department's policy to determine if Plaintiff violated that policy. That is the job of the CMPD itself. The Court is not to judge the prudence of that decision. *Id.* Because the Plaintiff admits to the conduct, there is no genuine issue of material fact based on this argument.

That is not dispositive of the issue, however. The Court is to look at the entirety of the evidence before the Court to determine if a genuine issue of material fact exists on each element. The Defendant argued that because Plaintiff had a significant disciplinary history his job performance was inadequate. This, however, is in direct contradiction with Plaintiff's last supervisor, Sgt. Mentavlos. Sgt. Mentavlos described Plaintiff as a "go-to person" and stated that Plaintiff had no issues with tardiness under the Sergeant's leadership. (Doc. No. 46-5). The testimony of Plaintiff's last supervisor at the CMPD provides evidence in the record to support the proposition that Plaintiff was performing his duties satisfactorily. Whether a fact finder would make that decision is an issue of credibility that is improper for this Court to determine at this stage. As such, there is a genuine issue of material fact as to whether Plaintiff's job performance was adequate.

The next element of the prima facie case requires a plaintiff to show adverse employment action. Here, the CMPD fired Plaintiff which clearly qualifies as an adverse employment action. Finally, a plaintiff must show different treatment from those individuals who are outside of the protected class. Plaintiffs often meet this element using comparator evidence. *See Moore v. Charlotte*, 754 F.2d 1100 (4th Cir. 1985). When using comparator evidence, a plaintiff is not required to produce evidence that shows "precise equivalence and culpability between

employees." *Id.* at 1106. However, "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008). Plaintiffs must establish that their comparators are similar in "all relevant respects." *Haywood v. Locke*, 387 Fed. App'x 355, 359 (4th Cir. 2010) (per curiam).

Defendant argues that Plaintiff has failed to establish adequate comparators because each proposed comparator worked under a different supervisor. Plaintiff relies on six different comparators. (Doc. No. 46). Each of the comparators have several different disciplinary citations on their record. Many of the comparators have the same or similar charges that appear on Plaintiff's disciplinary record. However, none of the comparators listed by Plaintiff have the same supervisor as the Plaintiff.

After review of the record, the Court finds that only Aquino is an adequate comparator out of the list provided by Plaintiff. While it is true that Aquino worked in a separate division with a different chain of command, there is significant overlap between Plaintiff's and Aquino's disciplinary history. When Aquino accused Plaintiff of raping her, Sgt. Burke handled the investigation into the complaint. In that position, Sgt. Burke interviewed both Plaintiff and Aquino. Sgt. Burke ultimately recommended a rule of conduct violation against Plaintiff. This recommendation occurred while Sgt. Burke had phone records that showed Aquino on the phone with a different man during the time in which Plaintiff was allegedly raping her.

Sgt. Burke subsequently handled all the Internal Affairs investigations that resulted in a recommendation of suspension or termination for Plaintiff. Sgt. Burke also handled Internal Affairs investigations into Aquino for misuse of department equipment and intervention. While

Sgt. Burke was neither Plaintiff's nor Aquino's direct supervisor, Sgt. Burke played a large role in the disciplinary action taken against both Plaintiff and Aquino.

Defendant argues that Aquino cannot be an adequate comparator because she worked in a different division with a different direct supervisor. This argument misinterprets the rule that comparators must have the same supervisor to be adequate. The policy behind that rule is that different individuals view the same facts in a different manner. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000) *overruled on different grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). Additionally, different individuals utilize discretion to varying degrees. *Id.* Thus, many times when different decision makers are involved, the comparators are not similar in "all relevant respects." *Haywood*, 387 Fed. App'x, 359. Here, however, Sgt. Burke provides a common decision maker. Sgt. Burke determined whether to recommend discipline several times against both Plaintiff and Aquino. This common decision maker is enough to make Aquino an adequate comparator.

The other five comparators are not adequate comparators to Plaintiff. Each of the other comparators dealt with different chains of command and supervisors. There is no evidence that any of the same people who made Plaintiff's disciplinary decisions made any of the proposed comparators decisions. As such, the Court finds the other five comparators, excluding Aquino, inadequate to establish the prima facie case.

The Court finds Plaintiff has met his burden of establishing the prima facie case of discrimination. Because, Plaintiff has met his burden to establish a prima facie case of discrimination, the burden of production shifts to the Defendant to articulate a legitimate, non-discriminatory reason for the adverse action. The Parties do not dispute that Defendant has met that burden. As such, the Court will next address the issue of pretext.

**b. Pretext**

Once the Plaintiff has met his burden with respect to the prima facie case and the Defendant has articulated a legitimate, nondiscriminatory reason for the adverse action, the burden shifts back to the Plaintiff to establish pretext. In order to show pretext, a plaintiff must show that a defendant's articulated reason is both false and that the real reason is discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). However, "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Id.*

The Court finds that Plaintiff has provided sufficient evidence to create a genuine issue of material fact on the issue of pretext. In addition to providing evidence to support a prima facie case, the Plaintiff also provided evidence to show that the Defendant paid the attorneys' fees of the white, female officer when she was sued in her individual capacity by the Plaintiff. Additionally, when a judgment was entered for Plaintiff against Aquino in her individual capacity, Defendant paid the settlement. This fact alone creates a genuine issue of material fact on the issue of pretext.

The Plaintiff provided more, however. Chief Monroe, who testified at Plaintiff's Civil Service Board hearing, stated that Plaintiff would not have a spot as a sworn officer in his Department even if the Civil Service Board overturned his decision to terminate. The context of that statement shows that Chief Monroe's concern dealt with Plaintiff's allegedly dishonest behavior. (Doc. No. 46-15). At the conclusion of that hearing, Plaintiff was terminated. However, the CMPD is fully aware of Aquino's judgment that she slandered Plaintiff. Slander is an inherently dishonest cause of action. However, Aquino remains employed by the CMPD. The

13

different treatment of Plaintiff and Aquino provides adequate evidence for the issue of pretext to make it to the jury.

Plaintiff has provided this Court sufficient evidence to meet the prima facie case of discrimination. Defendant articulated a legitimate, nondiscriminatory reason for Plaintiff's adverse employment action. Finally, Plaintiff provided evidence upon which a reasonable fact finder could find pretext. As such, the Plaintiff has presented sufficient evidence to defeat the current Motion for Summary Judgment under the *McDonnell Douglas* framework.

c. **Members of the Same Class as Final Decision Makers**

Defendant also argues that Plaintiff cannot establish discrimination because the final decision maker in his termination, the Civil Service Board, consisted of members of his protected class. When a decision maker is of the same class as a plaintiff, that fact suggests no discrimination occurred. *Orgain v. Salisbury*, 305 Fed. App'x 90, 103 (4th Cir. 2008). However, the presence of a member of the protected class as a decision maker does not itself preclude a finding of discrimination. *Neely v. United States Postal Service*, No. 03-6566, 2007 WL 4389473 (E.D. Pa. Dec. 12, 2007).

Plaintiff has submitted sufficient evidence to defeat summary judgment even though some of the members of the Civil Service Board were of the same protected class. Specifically, Sgt. Burke, a white male, participated in several disciplinary decisions for both Plaintiff and Aquino. The final decision makers made their decisions, in part, due to the past reports of discipline made by supervisors, such as Sgt. Burke. The Supreme Court has specifically upheld this form of "cat's paw" liability noting that the decision-making authority of an employer is often spread amongst many agents. *Staub v. Proctor Hosp.*, 562 U.S. 411, 419 (2011). Thus, this Court finds there is sufficient evidence to defeat summary judgment because the mere presence

of members of the same protected class on the board of final decision makers does not inherently preclude a finding of no discrimination. Additionally, Plaintiff has presented sufficient evidence to proceed under a cat's paw theory of liability.

   **d. Plaintiff's Non-Discriminatory Reason**

Finally, Defendant argues that because Plaintiff stated that one of the Civil Service Board members made her decision based on an improper relationship with a CMPD officer, and therefore not Plaintiff's race or gender, the Plaintiff cannot establish discrimination. (Doc. No. 42-4). Plaintiff's statements are not enough to establish as a matter of law that the Defendant did not discriminate against the Plaintiff. While a trier of fact may hear that evidence and find it conclusive, an equally reasonable trier of fact may determine that statement is outweighed by the other evidence. That determination is not appropriate for this Court to make at this stage. As such, the Plaintiff presented sufficient evidence to survive the current Motion for Summary Judgment.

**V. CONCLUSION**

For the aforementioned reasons, Defendant's Motion for Summary Judgment is **DENIED**.

   **SO ORDERED**.

Signed: November 5, 2018

Graham C. Mullen
United States District Judge