# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:16-CV-00656-GCM

| | |
|---|---|
| MICHAEL TINSLEY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CITY OF CHARLOTTE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER COMES** before this Court to determine the appropriate equitable remedies in this case. The Court held a hearing in this matter on April 10, 2019. Prior to the hearing, the Parties each submitted briefs outlining their positions. The matter is now ripe for disposition.

## I. FACTUAL BACKGROUND

Michael Tinsley ("Plaintiff") sued the City of Charlotte ("Defendant") for race and sex discrimination under Title VII and Section 1983. 42 U.S.C. Section 2000e *et seq* ("Title VII"); 42 U.S.C. §1983 ("Section 1983"). After a jury trial, the jury returned a verdict in favor of Plaintiff on the sex discrimination claim (Doc. No. 86). Plaintiff requested the equitable remedies of backpay, front pay, and certain injunctive relief. Each will be discussed below.

## II. DISCUSSION

### a. Backpay

A successful Title VII litigant is presumptively entitled to a backpay award. *Albemarle Paper Company v. Moody*, 422 U.S. 405, 421 (1975). Title VII allows backpay as a part of the statutory goal to make an aggrieved plaintiff whole after a finding of discrimination. *Id.* at 419. Any award of backpay, however, is contingent upon a plaintiff satisfying his statutory duty to

mitigate damages. *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231–32 (1982). In satisfying his duty to mitigate, a plaintiff must "use reasonable diligence in finding other suitable employment." *Id.* at 231. "Although the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position, he forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied." *Id.*

1. **Mitigation**

Defendant argued that backpay is inappropriate in this case because Plaintiff failed to mitigate his damages. Defendant bears the burden of proving that Plaintiff failed to mitigate his damages. *Hutchison v. Amateur Electronic Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994). To show a failure to mitigate, a defendant must prove: "1) the plaintiff failed to exercise reasonable diligence to mitigate her damages, and (2) there was a reasonable likelihood that the plaintiff might have found comparable work by exercising reasonable diligence." *Id.*

The Court finds that Defendant failed to make the required showing. Evidence at the trial and hearing showed that Plaintiff registered for four different job recruitment websites. Additionally, Plaintiff testified that he placed resumes with different temporary employment agencies. Plaintiff applied for several jobs that were comparable to his employment with the police department including jobs investigating money laundering for banks and false insurance claims for insurance companies. Finally, Plaintiff credibly testified that he spoke with two different police departments to inquire about employment. During those conversations, the police departments told Plaintiff he was ineligible for employment due to his termination with Defendant.

The Court finds Plaintiff's evidence of mitigation credible. Further, the evidence provided by Plaintiff shows that he diligently attempted to find comparable employment. Defendant offered statistical evidence to show that Plaintiff should have been able to find comparable, full-time

employment within 33.7 weeks.[1] Defendant's evidence failed to account for the consequences associated with a termination on Plaintiff's record. Plaintiff utilized reasonable diligence, but Defendant's discriminatory termination prevented him from obtaining employment at every turn. Defendant cannot now fault Plaintiff for an inability to find comparable work when it was Defendant's discriminatory conduct that prevented Plaintiff from obtaining such work in the first place. Thus, the Court finds Plaintiff utilized reasonable diligence in mitigating his damages.

2. **After-Acquired Evidence**

Defendant also argues that both backpay and front pay are inappropriate because of the after-acquired evidence rule. The Supreme Court has held that after-acquired evidence can limit a damages award in certain instances. *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 (1995). In order to prove this defense, an employer must show that the employer discovered evidence after a termination, of an act so egregious that the plaintiff would have been fired without discriminatory considerations. *Id.* at 359-62. Here, Defendant argues that Plaintiff's trial admissions of violations of policy serve as such after-acquired evidence. The Court disagrees.

At trial, Plaintiff admitted to violating several policies of Defendant. Most of the violations dealt with tardiness or other attendance issues while others involved an apparent misunderstanding of Defendant's policies.[2] Even assuming for purposes of this opinion that those admissions constitute after-acquired evidence, Defendant failed to make a showing that Plaintiff's admitted acts were "so grave that [Plaintiff's] immediate discharge would have followed [their] disclosure." *Id.* at 356. Rather, evidence on the record shows that other police officers also violated the same or similar policies and were not terminated. Thus, Defendant cannot make the necessary showing

---

[1] Defendant relied upon statistics from the Department of Labor Statistics that show the average unemployment time was 33.7 weeks.
[2] The violations now argued to be "after-acquired" were in fact know to the Defendant and served as a basis for Plaintiff's discriminatory termination.

that Plaintiff would have been terminated if Plaintiff admitted to the violations during his employment with Defendant. Without this showing, the Court finds that Defendant failed to establish the after-acquired evidence defense in this case.

In the alternative, the Court finds that the jury verdict precludes applicability of the after-acquired evidence rule to these facts. Plaintiff admitted to several policy violations during the trial. Defendant argues that had Plaintiff admitted he violated policy during his employment with Defendant, Plaintiff "would have certainly been terminated." (Doc. No. 90, p. 4). However, the jury in this matter heard Plaintiff's admissions. Even after hearing Plaintiff admit to several policy violations, the jury found that Defendant would not have fired Plaintiff without consideration of his sex. (Doc. No. 86). By now arguing that Defendant would have fired Plaintiff based only on the admitted violations, Defendant invites this Court to reweigh the evidence. The Court will not accept this invitation. Fact finding is the sole province of the jury in this matter, and the Court finds that the jury verdict precludes the applicability of the after-acquired evidence rule on these facts.

Therefore, the Court finds the after-acquired evidence rule does not apply in this case. First, Defendant failed to show that any after-acquired evidence proved the existence an act so egregious that it would certainly have led to Plaintiff's immediate termination. In the alternative, the jury found that Defendant would not have fired Plaintiff without consideration of his sex which precludes Defendant's argument at this stage.

3. **Backpay Period**

Having found that backpay should be awarded, the Court must now determine the appropriate amount of backpay to award to the Plaintiff. The period in which backpay is appropriate begins on the date the unlawful employment action took place and ends on the day of

the judgment. *Patterson v. American Tobacco Company*, 535 F.2d 257, 269 (4th Cir. 1976). Courts calculate backpay by taking the sum of wages and benefits that would have been earned absent the discriminatory conduct minus any money actually earned during that time period. 42 U.S.C. § 2000e-5(g). The Court will also apply pre-judgment interest in the amount of eight percent pursuant to North Carolina state law. *See* N.C. Gen. Stat. Ann. § 24-1; *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1031 (4th Cir. 1993) (en banc) (affirming application of Virginia's statutory interest rate); *Hylind v. Xerox Corp.*, 31 F. Supp. 3d 729, 742 (D. Md. 2014), aff'd, 632 Fed. App'x 114 (4th Cir. 2015) (applying Maryland's statutory interest rate).

    **4. Backpay Calculation**

Applying the above formula, Plaintiff is entitled to $699,820.00 in backpay. Defendant provided Plaintiff with a document during discovery that outlined Plaintiff's projected earnings, including benefits, had he continued work as a police officer. The total amount of wages and benefits he would have earned had he continued as a police officer totaled $593,960.00 during the appropriate period. Plaintiff actually earned $40,322.00 during that same time period for a difference of $553,638.00. The difference, adjusted to include pre-judgment interest, is $699,820.00.

Defendant argued that the above number is erroneous for two main reasons: (1) Plaintiff failed to properly mitigate and the number should be lowered to account for the failed mitigation, and (2) the backpay award should not consider all benefits available to Plaintiff as a police officer. The Court has already ruled that Plaintiff sufficiently mitigated his damages so the Court will not repeat that analysis here.

The Court will provide a separate discussion of Defendant's second argument, however. Defendant called an expert who opined on the backpay award Plaintiff should receive. Defendant's

expert considered only wages and "legally required benefits" in coming to the amount Plaintiff would have earned had he continued as a police officer. In adopting this number, Defendant advocated for the position that Plaintiff should only receive his wages and "legally required benefits" rather than his wages and fringe benefits he would have been entitled to had he continued his employment. Specifically, Defendant's expert excluded fringe benefits such as vacation time and health insurance amongst others.

The Court disagrees with this position. "Overwhelming judicial authority recognizes that employers guilty of discrimination are liable for fringe benefits they would have provided to employees as well as back wages…." *Fariss v. Lynchburg Foundry*, 769 F.2d 958, 964 (4th Cir. 1985) (allowing fringe benefits to be recovered in ADEA case). The purpose of the enforcement mechanisms of Title VII are to make plaintiffs whole after discriminatory action from employers. *Albemarle*, 422 U.S. at 418. In order to achieve that goal, the Court finds that fringe benefits should be included in the backpay award. For this reason, the Court finds Defendant's expert's calculation and the subsequent argument unpersuasive.

For the aforementioned reasons, the Court finds Plaintiff is entitled to $699,820.00 in backpay. The Court will now consider reinstatement, front pay, tax adjustment, and the miscellaneous equitable remedies requested by Plaintiff.

 b. **Reinstatement**

The Court must now consider whether reinstatement is an appropriate remedy on these facts. Title VII and Section 1983 look to place a plaintiff in the spot he would have occupied but for the discriminatory conduct. *See Uniroyal*, 928 F.2d at 1423; *Hunter v. Town of Mocksville*, 201 F.Supp.3d 750, 756-57 (M.D.N.C. 2016); *Squires v. Bonser*, 54 F.3d 168, 172 (3d Cir. 1995) ("Under Title VII, the statute's make-whole purpose 'is shown by the very fact that

Congress took care to arm the courts with full equitable powers.' The same is true under § 1983." (internal citations omitted)). Reinstatement and front pay provide ways for a court to achieve that goal by rectifying losses that will be realized from the time of judgment moving forward. See *Uniroyal*, 928 F.2d at 1423–24; *Hunter*, 201 F.Supp.3d at 756; *Squires*, 54 F.3d at 172–73.

In the Fourth Circuit, reinstatement is the preferred remedy over front pay. *Uniroyal*, 928 F.2d at 1424. Reinstatement is preferred as it eliminates some of the speculation that is necessary in crafting a front pay award. Reinstatement, however, is not always the best remedy. Courts have held reinstatement to be inappropriate when the litigation of the matter irreparably damaged the relationship between the parties. *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2d Cir.1984).

At the equitable remedies hearing in this matter, Defendant's counsel stated to the Court that the Defendant intended to offer Plaintiff reinstatement. After the hearing, the Court received a copy of a letter sent to Plaintiff. The letter stated that the City intended to offer Plaintiff employment with the Charlotte Mecklenburg Police Department on a shift of Plaintiff's choosing in the district of Plaintiff's choosing. The letter went on to state that Plaintiff could return to employment once Plaintiff completed "any state mandated training requirements." Plaintiff's counsel sent a reply letter to both Defendant and the Court stating that the offer letter was not an unconditional offer as contemplated in *Ford*. 458 U.S. at 241.[3]

A review of the record in this matter shows that reinstatement is impractical. While Defendant sent an offer letter to Plaintiff, the offer letter is suspect for several reasons. First, the offer letter conditioned the offer upon Plaintiff's completion of "any state mandated training requirements." It is unclear to the Court exactly what those training requirements would entail

---

[3] The Court directs the Clerk to enter both letters into the public docket.

given Plaintiff's current status. Additionally, Defendant has no control over those training requirements or the governing body who administers the training. Thus, it is not clear on this record that Plaintiff would be eligible to complete the required training. In any event, the offer is clearly a conditional offer that does not cutoff Plaintiff's right to backpay and front pay under *Ford*. *Id.* ("absent special circumstances, the rejection of an employer's *unconditional* job offer ends the accrual of potential backpay liability.") (emphasis added).

Even if the offer were unconditional, the Court is not convinced the offer is made in good faith. Defendant did not offer Plaintiff reinstatement until after the equitable remedies hearing. The letter that purportedly offered Plaintiff reinstatement contained very few specifics and spoke mostly in generalities.[4] As of the entry of this Order, the Court has not received a more complete offer from Defendant. While the Court could certainly order reinstatement without an offer from Defendant, Defendant's lack of action until the equitable remedies hearing calls into question the viability of the working relationship between Plaintiff and Defendant.

Outside of the temporal issues with the offer, the Court also finds reinstatement to be impractical because many of the people who held leadership positions at the time of Plaintiff's termination remain employed by Defendant. While many of these people have changed job titles, they still form a large portion of the leadership of the police department. At the equitable remedies hearing, Plaintiff testified that he felt intimidated by the prospect of returning to work for the Defendant.

The Court finds Plaintiff's testimony credible. Testimony at trial showed that Plaintiff received discriminatory treatment while working for the Defendant. For example, Defendant held a hearing on certain administrative charges that were brought against Plaintiff during his

---

[4] For example, the letter stated that the offer contained the following term and condition: "3) other equitable terms and conditions as agreed to by both parties."

employment with the Defendant. At that hearing, Defendant did not sustain the charges against Plaintiff. However, without notice, Defendant added new charges against Plaintiff and resumed the hearing on those new charges after a brief recess. Defendant sustained the new charges against Plaintiff. Ultimately the new charges that were sustained without any form of notice served as part of the basis for terminating Plaintiff. This is but one of the examples of discriminatory treatment Plaintiff endured while working for Defendant. The Court finds that the clear animus displayed by the Defendant toward Plaintiff and the subsequent litigation placed an irreparable strain on the relationship of the Parties making reinstatement impractical.

The Court further observes that reinstatement is particularly inappropriate given the line of work at issue in this case. Police officers' safety often requires mutual trust and responsibility amongst several officers. Here, the Court finds that the strain placed on the Parties' relationship would make the required trust nearly impossible. As such, the Court denies reinstatement.

c. **Front Pay**

Having denied reinstatement, the Court must now consider the equitable relief of front pay. *Uniroyal*, 928 F.2d at 1424 (stating that front pay may serve as a substitute where reinstatement is not practical). Front pay awards are inherently speculative as the award requires the Court to predict future events. *Id.* at 1423. The possibility of windfall for the Plaintiff requires the Court to take a "tempered" approach to any front pay award. *Hunter*, 201 F.Supp.3d at 757-58 (citing *Uniroyal*, 928 F.2d at 1424.). Plaintiff bears the burden of providing the essential information for the Court to award front pay. *Id.* at 758.

Courts around the country, including the Middle District of North Carolina, have used the following factors when determining whether front pay is appropriate: (1) the plaintiff's age; (2) the length of time the plaintiff was employed by the defendant employer; (3) the likelihood the

9

plaintiff's employment would have continued absent the discrimination; (4) the length of time it will take the plaintiff, using reasonable effort, to secure comparable employment; (5) the plaintiff's work life expectancy; (6) the length of time other employees typically held the position lost; (7) the plaintiff's status as an at-will employee; (8) the plaintiff's ability to work, including the ability to work for the defendant employer; (9) the plaintiff's subjective intention to remain in the position; (10) the plaintiff's efforts to mitigate damages. *See, e.g., Hunter*, 201 F.Supp.3d at 758-59 (internal citations omitted). The Court will consider the factors relevant to this case to determine the amount of front pay to award, if any.

1. **Factors Considered**

    a. **Age and Work Life Expectancy**

Plaintiff is forty-eight years old currently and was forty-two at the time of his termination. (Doc. No. 91, p. 3). Plaintiff's work life expectancy runs until March 3, 2028 when he would have accumulated thirty years of service making him eligible for full retirement. The Court finds Plaintiff's age and work life expectancy to be neutral factors for an award of front pay. While Plaintiff remains in his forties, which other courts have found to weigh against a lifetime award of front pay, Plaintiff's work life expectancy is relatively short at only nine years. *See Hunter*, 201 F.Supp.3d at 759-60; *Uniroyal*, 928 F.2d at 1423 ("[W]hen the period for reinstatement was expected to be a relatively short one, such as if the plaintiff was close to retirement, the strong preference in favor of reinstatement has been found to be neutralized by the increased certainty of the potential loss of pay, permitting consideration of a front pay award."); *Davis*, 742 F.2d at 923 (upholding front pay award to fifty-nine year-old, but noting that awarding front pay to forty-one year-old until time he qualifies for a pension might be unwarranted).

    b. **Length of Time Employed and Likelihood of Continued Employment**

Defendant employed Plaintiff for more than fifteen years prior to his termination. The length of time Plaintiff worked for Defendant weighs in favor of a front pay award. *See generally Hunter*, 201 F.Supp.3d at 759-60. The record also supports the fact that Plaintiff would have continued his employment with Defendant had Defendant not discriminated against him. Trial testimony showed that Plaintiff was a leader in the traffic unit for his Division. Additionally, all of Plaintiff's year end reviews rated Plaintiff in a positive manner. Thus, the Court finds Plaintiff was highly likely to continue his employment if Defendant did not discriminate against him. This factor weighs in favor of a front pay award.

### c. Ability to Obtain Comparable Employment and Mitigation

Plaintiff testified at trial and the equitable remedies hearing that he had spoken with two law enforcement agencies since his termination with Defendant. The agencies told him he was too old for an entry level position and did not qualify as a lateral hire due to his termination. Plaintiff also applied for comparable employment with insurance companies and banks to work as an investigator. Plaintiff received no offers in these fields due in large part to his termination with Defendant. Plaintiff's lack of success in finding comparable employment to this point shows that Plaintiff is unlikely to receive such employment moving forward. As such, this factor weighs in favor of an award of front pay. Finally, the Court incorporates the above mitigation analysis and notes that Plaintiff's mitigation efforts weigh in favor of a front pay award.

### d. Subjective Intention to Remain

The record supports that Plaintiff had a strong intent to remain a police officer with Defendant. Several witnesses testified that Plaintiff loved his job as a police officer. Plaintiff himself testified that he loved his job and intended to remain a police officer. This testimony was uncontradicted. As such, this factor weighs in favor of a front pay award.

### e. Conclusion Based upon Factors

The Court finds that the factors listed above, when considered together, weigh in favor of granting Plaintiff a front pay award. It is clear to the Court that the discriminatory conduct is the only factor that prevented Plaintiff from retiring as a police officer. Further, Defendant's conduct continues to prevent Plaintiff from receiving comparable work. The only practical way to remedy this harm is to provide Plaintiff with a front pay award. The Court must now determine the appropriate amount of that award.

### 2. Front Pay Period

In order to determine the amount of Plaintiff's front pay award, the Court must determine the period in which Plaintiff is entitled to receive front pay. Both Parties seem to agree that front pay should be awarded up until Plaintiff would have retired.[5] The Court makes this observation because both experts calculated front pay through retirement. Both Parties incorporated their respective expert opinions in their arguments in brief and at the hearing. Thus, both Parties seem to agree that front pay should be awarded through the date Plaintiff would have been eligible to retire. Even with this apparent agreement, the case law requires additional discussion on this point.

The goal of an award of front pay under Title VII and Section 1983 is to make an aggrieved Plaintiff whole. *Uniroyal*. 928 F.2d at 1423; *Davis*, 742 F.2d at 923. The amount of a front pay award is left to the sound discretion of the trial court. *Davis*, 742 F.2d at 923. Given the speculative nature of front pay awards and the dependence on predicting future events, front pay awards must be "tempered." *Hunter*, 201 F.Supp.3d at 757-58 (citing *Uniroyal*, 928 F.2d at 1424.). One court

---

[5] Defendant argues first that front pay should not be awarded at all due to Plaintiff's failed mitigation and based upon the after-acquired evidence rule. The Court already dispensed with those arguments. While Defendant stated in its brief that any front pay award should be "limited," Defendant's expert considered a front pay award through retirement. Defendant subsequently adopted that opinion in brief and argument.

observed that a front pay award through pension age for a plaintiff in their forties likely was "unwarranted." *Davis*, 742 F.2d at 923.

While this Court understands that making an award of front pay through retirement for a plaintiff who is in his forties would be unwarranted in many scenarios, the Court finds that award to be appropriate on these facts. Plaintiff only has nine years until he would have qualified for retirement. While Plaintiff is a young man, the amount of time until he could qualify for retirement is relatively short. Thus, the reasoning behind disfavoring an award of front pay through retirement to a plaintiff in his forties loses much of its persuasion in this case. Further, other Circuits have upheld front pay awards for longer than nine years. *See, e.g., Hukkanen v. Int'l Union of Operating Eng'rs, Hoisting & Portable Local No. 101*, 3 F.3d 281, 286 (8th Cir. 1993) (holding that a ten year front pay award did not constitute an abuse of discretion); *see also Donlin v. Philips Lighting North Am. Corp.*, 581 F.3d 73, 88 (3rd Cir. 2009) (holding that district court did not abuse its discretion in awarding plaintiff front pay for ten years); *Meacham v. Knolls Atomic Power Lab*, 381 F.3d 56, 79 (2d Cir. 2004) (affirming front pay awards of nine to twelve and one-half years), vacated on other grounds sub nom *KAPL, Inc. v. Meacham*, 544 U.S. 957, (2005); *Gotthardt v. National R.R. Passenger Corp.*, 191 F.3d 1148, 1157 (9th Cir. 1999) (affirming an eleven-year front pay award); *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 574 (7th Cir. 1995) (holding that ten-year front pay award did not constitute an abuse of discretion.). For the reasons stated above, the Court finds that a front pay award through the date Plaintiff would have been eligible for full retirement is appropriate.

### 3. Front Pay Calculation

In order to calculate the front pay award in this case, the Court will take the difference between what Plaintiff would have earned had he continued to work as a police officer and what

he is projected to make as a heavy machinery operator. The Court will then adjust that number to present value. Finally, the Court will account for the lost supplemental retirement income that Plaintiff would have been entitled to receive but for Defendant's discriminatory conduct.

Using the above metrics, the Court finds that Plaintiff is entitled to receive $629,210.00 in front pay. Based on the testimony and analysis of Plaintiff's expert, the Court finds Plaintiff would have earned $1,178,115.00 from the date of judgment until the date he reached retirement age. The Court further finds that Plaintiff has a projected earning capacity given his current situation of $449,508.00 during that same time period.[6] The difference in those numbers is $728,606.00.

The Court must adjust that difference to present value. Plaintiff's expert adjusted the number using the interest rate of a ten-year Treasury Bond. The Court finds this method reliable and appropriate so the Court will adopt this method of adjustment. Applying that method, the present value of the difference in earnings is $629,210.00. Thus, the Court finds that Plaintiff is entitled to $629,210.00 in front pay.

### d. Federal Income Tax Adjustment

Plaintiff also requested this Court provide Plaintiff with an award to offset the tax consequences of receiving his payment lump sum as opposed to receiving lower values over the course of Plaintiff's career. The Supreme Court has held that backpay awards are taxable in the year that the award is received. *See Comm'r of Internal Revenue v. Schleier,* 515 U.S. 323 (1995). Often, receiving a lump sum backpay award will cause a plaintiff to enter a higher tax bracket, and thus, the plaintiff will have a larger tax liability than the plaintiff would have suffered had the

---

[6] The Court notes that Plaintiff's projected earnings utilized the median income and benefits received by a heavy machinery operator. The evidence on record shows that Plaintiff has had very limited success in this field as of the date of this Order. Thus, the Court is skeptical that Plaintiff will ever reach the median income in that profession. However, the job of this Court is to "temper" front pay awards and prevent windfall for the Plaintiff. *Hunter*, 201 F.Supp.3d at 757-58 (citing *Uniroyal*, 928 F.2d at 1424.). Thus, the Court chose to utilize Plaintiff's expert's conservative estimate on this point.

plaintiff received the monies over the course of several years. *See Eshelman v. Agere System*, 554 F. 3d 426 (3rd Cir. 2009). Under the broad equitable powers provided to courts under Title VII and Section 1983, courts have discretion to include an additional sum of money to offset those negative tax consequences in appropriate cases. *Eshelman*, 554 F.3d at 441-42; *Sears v. Atchison, Topeka & Santa Fe Ry. Co.*, 749 F.2d 1451 (10th Cir.1984); *O'Neill v. Sears, Roebuck & Co.,* 108 F.Supp.2d 443, 446 (E.D. Pa. 2000) ("Plaintiff is entitled to an award for negative tax consequences....") (Hart, Mag. J.); *E.E.O.C. v. Joe's Stone Crab, Inc.,* 15 F.Supp.2d 1364, 1380 (S.D.Fla.1998) ("[A] district court, in the exercise of its discretion, may include a tax component in a lump sum backpay award to compensate prevailing Title VII plaintiffs.").

The Court finds that Plaintiff is entitled to an additional award to offset the negative tax consequences in this case. Testimony on the record shows that Plaintiff's effective tax rate had he continued as a police officer would have averaged 13.62 percent resulting in a tax liability of $110,987.00.[7] Plaintiff's effective tax rate on the lump sum will be approximately 34.11 percent resulting in a tax liability of $453,332.00. This results in a tax liability difference of $342,345.00. The Court finds that in order to achieve the make whole goals of Title VII and Section 1983, the Court must award Plaintiff an additional sum of money to offset this liability. As such, the Court will award Plaintiff an additional $342,345.00 to offset Plaintiff's tax liability.

e. **Overall Award**

The Court finds that Plaintiff is entitled to an overall award of $1,671,376.00. The Court finds this amount is necessary to meet the make whole goals of Title VII and Section 1983. The Court is cognizant that this is a large award. However, after considering the facts and

---

[7] Defendant's expert noted that this number seemed low but went on to state that he had not calculated a different number. The Court finds that Plaintiff's evidence on this point is credible and will follow that calculation.

circumstances of this case, the goals of Title VII and Section 1983, and the controlling case law, the Court finds this award to be appropriate.

Additionally, the Court notes that the difference between the amounts requested by the two Parties was small. However, Defendant did not factor in a tax adjustment in its suggested award. The Court specifically finds that a tax adjustment is necessary in this case. Given that finding, if the Court accepted Defendant's suggested award and added the necessary adjustment, the award would be nearly $200,000.00 higher than what the Court awards in this case. This further confirms to the Court that the award in this case is reasonable and necessary. As such, the Court has adopted the above findings of fact and conclusions of law to determine that Plaintiff is entitled to an award of $1,671,376.00. This award, along with the jury verdict, will be subject to statutory post-judgment interest, compounded daily from date of entry of this Order until payment pursuant to Title 28 United States Code Section 1961(a).

   f. **Miscellaneous Equitable Remedies**

Plaintiff asked this Court to include several forms of injunctive relief in addition to the monetary relief stated above. Specifically, Plaintiff asked this Court to expunge Plaintiff's last disciplinary citation and termination from his record. Plaintiff also requested that a copy of the Verdict Sheet be placed in Plaintiff's personnel file. Finally, Plaintiff requested that this Court require Defendant to implement a policy that ensures every employee is treated equally with regard to disciplinary infractions.

As stated from the bench during the hearing, the Court will require a copy of the Verdict Sheet be placed in Plaintiff's personnel file. However, the Court will deny the request for expungement of Plaintiff's disciplinary actions and termination. Rather, the Court will require that anytime Defendant releases Plaintiff's disciplinary history or personnel file for any reason, the

Verdict Sheet must be included. Specifically, anytime Defendant provides information about Plaintiff's termination or the disciplinary actions that led to his termination, Defendant is required to provide a copy of the Verdict Sheet as well.

Finally, the Court will deny Plaintiff's request that the Court require a system be put in place at the Charlotte Mecklenburg Police Department to ensure disciplinary actions are handed down equally to all employees. While the Court sympathizes with the goal of this request, this Court has no place in monitoring Defendant's disciplinary process on a continuing basis. Additionally, there is not enough information on this record for the Court to analyze the practical consequences associated with requiring Defendant to implement such a process. Therefore, the Court will deny this request.

### III.     CONCLUSION

For the aforementioned reasons, the Court finds Plaintiff is entitled to $1,671,376.00 in equitable remedies of backpay, front pay, and federal income tax adjustment. Additionally, Defendant is required to place a copy of the Verdict Sheet in Plaintiff's personnel file. Defendant is further **ORDERED** to include a copy of the Verdict Sheet anytime Defendant provides information regarding Plaintiff's disciplinary history or termination.

**SO ORDERED**.

Signed: April 26, 2019

Graham C. Mullen
United States District Judge