# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:16-CV-00656-GCM

| | |
|---|---|
| MICHAEL TINSLEY, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CITY OF CHARLOTTE, ) <br> ) <br> Defendants. ) <br> ) | **ORDER** |

**THIS MATTER COMES** before this Court on Defendant City of Charlotte's ("Defendant") Motion for Judgment as a Matter of Law. (Doc. No. 98). Plaintiff Michael Tinsley ("Plaintiff") responded (Doc. No. 105) to which Defendant replied. (Doc. No. 106). As such, this matter is ripe for disposition.

**I. PROCEDURAL HISTORY**

Plaintiff sued Defendant alleging discrimination on the basis of his sex and his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII") and 42 U.S.C. § 1983 ("Section 1983") (Doc. No. 1). Defendant moved for summary judgment on all claims which this Court denied on November 5, 2018.

This case was tried to a jury from March 19, 2019 until March 26, 2019. At the close of Plaintiff's case in chief and also at the close of all evidence, Defendant moved, pursuant to Federal Rule of Civil Procedure 50, for judgment as a matter of law. This Court denied both motions. The jury ultimately returned a verdict in favor of Plaintiff on the sex discrimination issue but found that Defendant did not discriminate against Plaintiff on the basis of his race.

**II. STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 50(b), a trial court may grant a renewed motion for judgment as a matter of law if "there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party on that issue." *Golson v. Green Tree Financing Services, Inc.*, 26 F. App'x 209, 211 (4th Cir. 2002) (quoting *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 297 (4th Cir. 1998)). "If, viewing the facts in the light most favorable to the non-moving party, there is sufficient evidence for a reasonable jury to have found in [its] favor, we are constrained to affirm the jury verdict." *Lack v. Wal Mart Stores, Inc.,* 240 F.3d 255, 259 (4th Cir. 2001).

When determining whether to grant a motion for new trial pursuant to Federal Rule of Civil Procedure 59, a court may weigh the evidence and consider the credibility of witnesses. *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998). "A new trial will be granted if '(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" *Id.* (quoting *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.,* 99 F.3d 587, 594 (4th Cir.1996). The decision to grant or deny a new trial is a matter within the Court's sound discretion. *Cline*, 144 F.3d at 301.

### III. DISCUSSION

Defendant moved this Court for judgment as a matter of law or, in the alternative, for a new trial. In support of this Motion, Defendant argues that (1) Plaintiff introduced insufficient evidence for a reasonable jury to find Defendant discriminated against Plaintiff on the basis of his sex, (2) Plaintiff failed to provide a legally sufficient comparator to support his claim, and (3) Defendant provides a laundry list of other perceived errors in the trial. The Court will discuss each below.

#### a. Sufficient Evidence to Support the Jury Verdict

First, Defendant argues that Plaintiff did not provide sufficient evidence for a reasonable jury to find that Defendant discriminated against Plaintiff. In support of this argument, Defendant argues that Plaintiff had an extensive disciplinary history and no reasonable jury could conclude that Defendant fired Plaintiff for any reason other than his job performance.

The Court disagrees. Defendant spent a considerable amount of time during the trial walking through Plaintiff's disciplinary history in front of the jury. Plaintiff's disciplinary history appeared in Defendant's opening, in Defendant's cross examinations, in Defendant's case-in-chief, and finally in Defendant's closing. Suffice it to say, Plaintiff's disciplinary history was well known to the jury. The jury, however, found that it was sex discrimination, not that disciplinary history, that led to Plaintiff's termination.

That decision was well supported by the evidence. The investigation that ultimately led to Plaintiff's termination was the result of Plaintiff being accused of rape by Aimee Aquino ("Aquino"), a female officer who also worked for Defendant. During the investigation, Sargent Burke of Internal Affairs interviewed Plaintiff regarding the incident. Later, Plaintiff appeared before a Chain of Command Review Board. During that hearing, Plaintiff again provided testimony regarding the incident. The Parties dispute whether Plaintiff provided consistent or contradictory testimony during those two interviews.

Despite the dispute regarding Plaintiff's candor, Defendant added two new charges as a result of the allegedly contradictory testimony. Defendant informed Plaintiff during his Chain of Command Review Board hearing that those two additional charges were being added. Then, Defendant recessed the hearing briefly before returning to hold a hearing on the two new charges

the same day. Defendant sustained the two new charges against Plaintiff. Defendant relied upon these two sustained charges when Defendant terminated Plaintiff.[1]

While Defendant ultimately sustained four charges against Plaintiff immediately before his termination, Defendant placed a specific emphasis on the charges dealing with Plaintiff's alleged lack of candor. Specifically, at Plaintiff's Civil Service Board hearing, Chief of Police Rodney Monroe testified that an officer with truthfulness or credibility issues would be of no use to the Department. Thus, even if the Civil Service Board voted to not terminate Plaintiff, Chief Monroe stated that Plaintiff would not be able to work in the field as an officer due to his credibility issues.

While the Defendant pursued Plaintiff's credibility issues all the way through termination, the same level of zeal was not displayed toward Aquino. During the investigation into Aquino's rape allegation against Plaintiff, Aquino described the timing of the alleged rape very specifically. Aquino claimed that Plaintiff raped her from 2:00 a.m. until 3:00 a.m. on the morning of April 2, 2013. However, during the investigation into the allegation, Defendant uncovered phone records that showed Aquino on the phone with another man from 1:55 a.m. until 2:21 a.m. and again on the phone with the other man at 3:03 a.m. Evidence at trial showed that Aquino did not disclose these phone calls to Sgt. Burke during her Internal Affairs interview. Thus, while Defendant had questionable evidence that Plaintiff had provided contradictory testimony, Defendant possessed indisputable evidence that, at the very least, Aquino did not tell the entire story to Internal Affairs during the investigation. Even with the indisputable evidence that Aquino failed to tell the entire story, it was Plaintiff, not Aquino, who was cited for termination, in large part, due to his alleged credibility issues.

---

[1] The Court notes that whether Plaintiff actually provided contradictory testimony was heavily contested at trial. Thus, a reasonable jury could find that Plaintiff did not provide false testimony to the Board.

Later Plaintiff sued Aquino for slander relating to the rape allegation. After a jury trial in that case, the jury found that Aquino had in fact slandered Plaintiff. During that trial, Defendant paid for Aquino's attorney and ultimately paid the settlement on her behalf. Defendant made these payments despite the fact that Plaintiff sued Aquino in her individual capacity. Additionally, Aquino remained employed by Defendant through the end of the trial in this case despite being found liable for slander. Thus, a reasonable jury could find that Defendant's treatment of integrity issues between its male and female employees is vastly different. Indeed, the above-mentioned evidence along with the rest of the evidence introduced at trial provides sufficient evidence for a reasonable jury to conclude that sex discrimination led to Plaintiff's termination. As such, Defendant's Motion on this ground is **DENIED**.

b. **Adequate Comparator**

Next, Defendant argues that Plaintiff failed to establish an adequate comparator to support his claim. In order to prove his discrimination claim, Plaintiff needed to establish an adequate comparator to present circumstantial evidence of discrimination. An adequate comparator is a person outside of Plaintiff's protected class that is similar in "all relevant respects." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (per curiam). To be similar in all relevant respects, a comparator must have "dealt with the same supervisor." *Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992)). Defendant argues that Plaintiff failed to show that Plaintiff and Aquino dealt with the same supervisor.

The same supervisor requirement finds its support in human nature. The purpose of this requirement is to account for different supervisors seeing facts differently, thus leading to different results even without discriminatory treatment. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000) *overruled on different grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d

760 (7th Cir. 2016) ("Different employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may exercise their discretion differently"). Thus, the purpose of the element is to require Plaintiff to show the same supervisor or decision-maker was involved in the differing treatment experienced between he and his comparator.

In *Staub*[2], the Supreme Court held that even if the final decision-maker did not have or show discriminatory animus, if anyone in the decision-making process or recommending process exhibited animus, the employer is not immune from liability. The Court noted: "[A]n employer's authority to reward, punish, or dismiss is often allocated among multiple agents. The one who makes the ultimate decision does so on the basis of performance assessments by other supervisors." *Id.* at 420. Thus, even if the final decision-maker did not exhibit discriminatory animus, liability may still attach if any supervisor along the decision-making path exhibited such animus. *Id.*

In this case, Plaintiff alleged that Aquino was an adequate comparator to support his discrimination claim. Defendant argues that Plaintiff and Aquino were assigned to different divisions and had different chains of command, thus Plaintiff cannot establish the common supervisor requirement. On first blush, this argument seems to have merit as Plaintiff and Aquino had two different direct supervisors. However, that does not end the analysis.

Evidence at trial showed that Defendant utilized a tiered approach to discipline. Depending on the severity of the charge levied against an employee, different departments handle the investigation. For example, less serious infractions are reviewed by the officer's supervisor while more serious infractions are reviewed by Internal Affairs. Evidence at trial showed that when

---

[2] *Staub v. Proctor Hospital*, 562 U.S. 411 (2011).

Internal Affairs investigates a potential charge, a Sargent within Internal Affairs, not the officer's direct supervisor, is the person conducting the investigation. Thus, it is possible for officers from different divisions to be subject to an investigation by the same Sargent from Internal Affairs. Indeed, when serious infractions are investigated, Sergeants from Internal Affairs and not the direct supervisor are the supervisors in charge of that investigation.

That is exactly what happened in this case. While Plaintiff and Aquino worked for different divisions and had different chains of command, both came under investigation by Sgt. Burke of Internal Affairs. The evidence at trial showed that Sgt. Burke investigated several charges for both Plaintiff and Aquino, but specifically, Sgt. Burke was the Sargent who investigated Aquino's rape allegation against Plaintiff. Thus, it was Sgt. Burke who served as the supervisor who investigated the charges that ultimately led to Plaintiff's termination.[3]

Evidence at trial showed that Sgt. Burke's investigation into the alleged rape uncovered phone records that showed Aquino's account of the rape to be, at the very least, incomplete. Despite the indisputable evidence that Aquino failed to give a complete account of the event, only the male Plaintiff and not the female comparator was cited for termination due to integrity issues. Defendant cited Plaintiff for termination on the basis of the facts gathered and produced by Sgt. Burke. Sgt. Burke conducted interviews of Plaintiff and Aquino in different tones. Ultimately, Sgt. Burke served as the first step in the decision-making process that led to Plaintiff's termination and Aquino's retention. For that reason, Sgt. Burke qualifies as a common supervisor. *See Haywood*, 387 F. App'x at 359 (requiring a common supervisor); *Staub*, 562 U.S. at 420 (attaching organizational liability for acts of any supervisor along decision-making chain).

---

[3] To highlight this point, even if Plaintiff and Aquino had served in the same division, Sgt. Burke still would have been the supervisor in this context. Plaintiff's and Aquino's direct supervisors were not involved in the investigation that led to Plaintiff's termination. As such, the division in which each of them served is largely irrelevant for this analysis as the common supervisor for disciplinary purposes is Sgt. Burke.

Defendant argues that the Civil Service Board, not Sgt. Burke, made the final decision to terminate Plaintiff, and thus, Sgt. Burke is not the decision-maker in this case. According to Defendant, it is the job of the independent Civil Service Board to make final determinations of discipline which makes Sgt. Burke's involvement irrelevant. If the Civil Service Board were truly independent, free from any influence of Internal Affairs, this argument may have merit. That simply is not the case, however.

Members of Internal Affairs sit in on both the Civil Service Board hearings as well as the deliberations. Internal Affairs members are present as evidence is submitted, and testimony is taken. Once deliberations start, members of Internal Affairs remain in the room to observe the Civil Service Board discussions. The mere presence of Internal Affairs during these deliberations allows for a reasonable inference of at least some influence over the outcome. As a matter of fact, Sgt. Burke staffed Plaintiff's Civil Service Board hearing in this case. Thus, the evidence supports that the Civil Service Board is not independent, but rather, the Civil Service Board is directly influenced by the alleged perpetrator of the discrimination in this case. Thus, Plaintiff provided evidence that a supervisor, Sgt. Burke, displayed discriminatory animus and influenced the ultimate decision of the Civil Service Board. Following *Staub*, Plaintiff provided a legally sufficient basis for the jury's verdict.[4]

As stated above, Sgt. Burke qualifies as a common supervisor in this case. Because Plaintiff provided evidence upon which a reasonable jury could find that he and Aquino were similar in all

---

[4] The Court notes that if the Court accepted Defendant's argument, Defendant would vitiate Title VII protections simply by organizational structure. According to Defendant, the presence of the Civil Service Board's final determination leaves Plaintiff with no redress for the discrimination the jury found he had endured. The Court will not allow Defendant to defeat the purposes of Title VII due to complex organizational structure. Rather, the Court will follow *Staub* and hold that Sgt. Burke's involvement in the decision-making process provides a sufficient legal basis for the jury's verdict.

relevant respects, Defendant's Motion for Judgment as a Matter of Law or for a New Trial is **DENIED**.

### c. Jury Verdict

Defendant moved for judgment as a matter of law and for a new trial based on the lack of evidence to legally support the jury's verdict. While the sufficiency of the evidence is specifically discussed above, the Court will further discuss the verdict below.

The case was tried to a jury representative of the Charlotte community. The jury heard ample evidence of how Defendant treated Plaintiff, and how that treatment differed from the treatment Aquino experienced. After several days of testimony and evidence, the jury retired to deliberate. The jury's verdict shows that the jury was able to sift through the evidence to find that the difference in treatment resulted from Plaintiff's sex and not his race. This decision is supported by the evidence presented at trial. Thus, while Defendant argues strenuously that the verdict should be overturned, the Court is convinced that the verdict in this case is the result of a fair trial which resulted in a jury verdict for the Plaintiff. As such, the Court will not disturb that verdict.

### d. Other Perceived Errors

Defendant next lists eight perceived errors that Defendant believes could serve as a basis for granting judgment as a matter of law or in the alternative a new trial. Defendant simply listed these perceived errors and did not argue them further. The Court has reviewed the list and finds no basis to grant judgment as a matter of law or a new trial.

## IV. CONCLUSION

For the aforementioned reasons, Defendant's Motion for Judgment as a Matter of Law is **DENIED**. Defendant's Motion for a New Trial is likewise **DENIED**.

**SO ORDERED**.

Signed: July 29, 2019

Graham C. Mullen
United States District Judge