# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:16-CV-00656-GCM

| | |
|---|---|
| MICHAEL TINSLEY, | )<br>) |
| Plaintiffs, | )<br>) |
| v. | ) **ORDER**<br>) |
| CITY OF CHARLOTTE, | )<br>)<br>) |
| Defendants. | )<br>) |

**THIS MATTER COMES** before this Court on Plaintiff Michael Tinsley's ("Plaintiff") Motion for Attorney's Fees. (Doc. Nos. 96, 108). Defendant City of Charlotte ("Defendant") responded to which Plaintiff replied. As such, this matter is ripe for disposition.

## I.  PROCEDURAL BACKGROUND

Plaintiff sued Defendant alleging sex and race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, as amended, and 42 U.S.C. §1983. The matter was tried to a jury on March 19, 2019. At the conclusion of the trial, the jury returned a verdict in favor of Plaintiff on the sex discrimination claim and Defendant on the race discrimination claim. The jury awarded Plaintiff $125,000 in damages. After the jury verdict, the Court held a hearing to determine appropriate equitable relief in this matter. This Court held that Plaintiff was entitled to $1,671,376 in equitable relief which encompassed: back pay, front pay, and a federal income tax adjustment. (Doc. No. 95). Plaintiff now moves this Court for an award of attorney's fees as the prevailing party under 42 U.S.C. §2000e-5(k).

## II.  DISCUSSION

According to 42 U.S.C. §2000e-5(k), a Court may award a prevailing party in Title VII actions attorney's fees. Here, Defendant does not dispute that Plaintiff is a prevailing party. After a review of the record and noting that Defendant does not dispute the issue, the Court finds that Plaintiff is indeed a prevailing party. In the Court's discretion, the Court finds that this case is an appropriate case for an award of attorney's fees. *See EEOC v. Great Steaks, Inc.*, 667 F.3d 510, 516 (4th Cir. 2012) (citing *Christianburg Garment Company v. Equal Employment Opportunity Commission*, 434 U.S. 412, 417 (1978)) ("Prevailing plaintiffs in Title VII actions ordinarily are entitled to Attorneys' fees unless special circumstances mitigate against such an award."). Because Plaintiff is a prevailing party and because the Court finds this case is an appropriate case to award attorney's fees, the issue before this Court on the present Motion is the appropriate amount of those fees.

To determine the appropriate amount of attorney's fees, this Court is tasked with determining the lodestar amount. The lodestar amount is the number of hours reasonably expended on the litigation multiplied by a reasonable rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Fourth Circuit adopted the twelve *Johnson* factors set forth by the Fifth Circuit. *Barber v. Kimbrell, Inc.*, 577 F.2d 216, 226 N. 28 (4th Cir. 1978) (adopting factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974). The twelve factors are as follows:

> (1) Time and labor expended;
> (2) The novelty and difficulty of the question raised;
> (3) The skill required to properly perform the legal services rendered;
> (4) The attorney's opportunity costs in pressing the litigation;
> (5) The customary fee for like work;
> (6) The attorney's expectations at the outset of the litigation;
> (7) The time limitations imposed by the client or circumstances;
> (8) The amount in controversy and the results obtained;
> (9) The experience, reputation and ability of the attorney;

(10) The undesirability of the case within the legal community in which the suit arose;
(11) The length and professional relationship between the attorney and client; and
(12) Attorneys' fees in similar cases.

*Id.* The Court will discuss each relevant factor in turn.

### a. Time and Labor Expended

First, the Court must consider the time and labor expended. Plaintiff's counsel submitted a declaration and billing records showing that Ms. Geraldine Sumter, Plaintiff's lead counsel, spent 658.05 hours on this matter. Mr. Michael Littlejohn, Plaintiff's counsel who served as second chair during Plaintiff's trial, expended 71.2 hours on this matter. Ms. Vicky Reddy, Ms. Sumter's paralegal, spent 69.7 hours on this matter. Finally, Ms. Amy Morancie, a third-year law student intern, spent 55.3 hours on this matter. (Doc. Nos. 96-3, 108-3). Plaintiff contends that these billings represent the necessary billings to protect Plaintiff's interests and do not include clerical tasks.[1]

Defendant argues that the hours listed above are unreasonable and should be reduced. Defendant makes several arguments as to why the hours claimed are unreasonable. Each will be discussed below.

### 1. Civil Service Board Hearing

Defendant argues that Plaintiff should not receive attorney's fees for Plaintiff's counsel's appearance at his Civil Service Board hearing. According to Defendant, this appearance occurred prior to the instant litigation, and the Civil Service Board hearing was not held pursuant to Title VII.

---

[1] Ms. Sumter states to the Court that she "pruned" the records to remove menial or managerial tasks such that the billings before the Court represent the time she actually spent in the representation of this matter.

3

To support this argument Defendant cites *New York Gaslight Club, Inc. v. Carey*[2]. In *Carey*, the Supreme Court held that a district court may award attorney's fees for counsel's time spent in state or administrative proceedings held "pursuant to the provisions of Title VII." *Carey*, 447 U.S. at 71. According to Defendant, the Civil Service Board hearing is a creature of state and municipal law- not a proceeding held pursuant to Title VII. As such, Defendant argues that Plaintiff cannot claim attorney's fees for the hours expended in preparation and to attend that hearing.

Plaintiff frames the issue in a different manner. Rather than arguing that Plaintiff is entitled to those hours due to Ms. Sumter's representation at the hearing, Plaintiff argues that Ms. Sumter's appearance served as a fact gathering opportunity. Plaintiff's counsel appeared at the hearing to have the opportunity to test the credibility of Defendant's witnesses while also observing the witness's demeanor under examination. Thus, Plaintiff's counsel utilized the hearing as a de facto deposition. Plaintiff's appearance at the Civil Service Board hearing obviated her need to take the deposition of several witnesses who ultimately appeared at trial. Plaintiff argues that the fact-finding nature of counsel's appearance at the hearing should be compensated in the award of attorney's fees.

The Court agrees with Plaintiff. Plaintiff's counsel's appearance at the hearing saved the Parties the time and expense that is required when depositions are taken. Certainly, had Ms. Sumter not attended the hearing and chose to take the depositions of the witnesses who later appeared at trial, the hours expended preparing for and taking those depositions would be reasonable. The Court finds no reason to reduce counsel's compensation because she chose to pursue the most

---

[2] *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54 (1980).

efficient route. As such, the Court finds that the hours spent in preparation for and in attending the hearing to be reasonable and will consider those hours in the lodestar calculation.[3]

### 2. Mr. Littlejohn's Hours

Defendant next argues that Plaintiff's claim for Mr. Littlejohn's hours is not reasonable. While placed under a heading focused on the hourly rate charged by Mr. Littlejohn, Defendant seems to argue that Mr. Littlejohn's hours should be deemed unreasonable in their entirety. Defendant bases this argument on the fact that Mr. Littlejohn did not "participate in any depositions, or the drafting of any motions. Moreover, he did not actively participate in the trial itself. Although seated at the counsel table, at best he only provided clerical assistance to Plaintiff's counsel." (Doc. No. 102, p. 4).

The Court disagrees. First, Plaintiff does not claim any hours for Mr. Littlejohn that deal with drafting motions or appearing at depositions. Thus, his lack of involvement at that stage of the litigation is irrelevant to determine the reasonableness of his labor in the portion of the litigation in which he participated. Next, Defendant argues that Mr. Littlejohn provided "at best . . . clerical assistance to Plaintiff's counsel." It is true that Mr. Littlejohn did not examine any witnesses or argue any motions. However, the Court is unwilling to state that Mr. Littlejohn's assistance amounted to clerical work. Rather, this Court is very cognizant of the importance of a second chair attorney while trying a case. Mr. Littlejohn's efficient presentation and organization of exhibits along with his organization and handling of witnesses helped present a cogent, easily understandable case to the jury.

---

[3] The Court notes that Plaintiff's counsel certainly advocated for her client during that hearing in addition to simply fact-finding. However, as it pertains to this litigation, counsel's representation at the hearing served more as a fact-finding mission which the Court finds should be compensated in the attorney's fee award.

The above listed actions by Mr. Littlejohn are just the actions which this Court actively observed. Plaintiff argues in brief that Mr. Littlejohn took specific notes on testimony given by the witnesses at the direction of Plaintiff's lead counsel. Additionally, Plaintiff states in brief that Mr. Littlejohn took on an issue spotting role during the course of the trial. The Court finds each of these actions to be consistent with the actions of a second chair attorney.[4] Further, a review of the billing records show that the hours spent on these tasks are reasonable. As such, the Court finds Mr. Littlejohn's hours expended to be reasonable and will include them in the lodestar calculation.

### 3. Block Billing

Defendant next argues that Plaintiff's hours should be reduced because counsel used a method of "block billing" to record the time spent on different tasks. Block billing occurs when an attorney records his or her time with several different tasks in a single time entry such that a court cannot decipher exactly how long was spent on each individual action. Courts have found that when block billing is present, an appropriate remedy is to reduce the hours by a percentage in the discretion of the district court. *See, e.g.*, *Denton v. PennyMac Loan Servs., LLC*, 252 F. Supp. 3d 504, 525 (E.D. Va. May 15, 2017) (Davis, J.).

Plaintiff acknowledges that counsel utilized block billing on at least 128.8 hours. Due to that acknowledgement, the Court will proceed to determine whether a reduction for block billing is appropriate. The use of block billing to record time is a dangerous proposition for counsel as a court's ability to determine the reasonableness of any one entry is limited. This problem is exacerbated when the time entry includes different tasks, some of which are compensable while others are not. However, when all tasks within one time entry are compensable, the evils of block

---

[4] The Court notes that Defendant was represented by two attorneys during the entire trial as well. While both of Defendant's attorneys took on speaking roles, the Court finds it very likely that both attorneys for Defendant expect to be compensated for their time spent both speaking and not speaking during trial.

billing become less troublesome. *Rossum v. Baltimore County*, GJH–14–0115, 2017 WL 4270435, *3 (D. Md. Sept. 26, 2017) (Hazel, J.) ("Block billing would only be inappropriate if one or more tasks performed by an individual attorney was not recoverable such that the Court could not discern the actual time charged for recoverable tasks.")

Here, Defendant does not argue that any of the actions listed in the block billing entries are unreasonable. Rather, Defendant simply takes issue that Plaintiff utilized the often used practice of block billing. Defendant failed to point to even a single task that it believed to be unreasonable. The Court likewise reviewed the billing records and did not find a task in the block billing entries that is an unreasonable task. Because all the tasks listed in the block billing entries are reasonable, the Court finds that a reduction simply because Plaintiff utilized that form of record keeping is unwarranted. Thus, the Court will not reduce the hours expended simply because Plaintiff utilized block billing.

   **4. Race Discrimination Reduction**

Defendant finally argues that Plaintiff should only receive attorney's fees for his successful claim, sex discrimination, and not for the unsuccessful claim, race discrimination. The Supreme Court has held that if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436. Fourth Circuit law teaches that a district court should determine the lodestar amount and then "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Robinson v. Equifax Information Servs, Inc.*, 560 F.3d 235, 244 (4th Cir. 2009).

Clear in the cases from both the Supreme Court and the Fourth Circuit is courts should reduce hours for unsuccessful and *unrelated* claims. To this end, the Supreme Court created the

common core of facts doctrine. That doctrine states that a party who is successful on one claim and unsuccessful on the other can obtain attorney's fees for both claims if the claims arose from the same common core of facts. *Hensley*, 461 U.S. at 435-36. The Supreme Court based this doctrine on the idea that cases involving a common core of facts would prove difficult to separate tasks into different claims. *Id.* at 435.

Here, Plaintiff's sex and race discrimination claims involve a common core of facts. While the actions discussed at trial took place over the course of several years, the facts that ultimately supported the discrimination claim came from the different treatment experienced by Plaintiff and fellow officer, Aimee Aquino. Ms. Aquino is a Caucasian female while Plaintiff is an African American male. Thus, the evidence used to support Plaintiff's sex discrimination claim also supported his race discrimination claim. The jury was ultimately able to parse the evidence to find that it was sex, not race, that led to Plaintiff's discriminatory treatment; however, the evidence on each claim largely overlapped. Thus, this case is the quintessential case where the common core of facts doctrine applies.

Finally, the Court notes that Plaintiff had complete success on his claim. While the jury only ruled for Plaintiff on the sex discrimination claim, this ruling completely vindicated Plaintiff's position: that he was fired for discriminatory reasons. Under *Hensley*, the Court finds that Plaintiff achieved complete success despite not succeeding on every contention. *Id.* ("[In circumstances where a Plaintiff obtained excellent results] the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit."). As such, the Court will not reduce Plaintiff's counsel's hours due to the unsuccessful race discrimination claim.

Having discussed each of Defendant's objections to Plaintiff's billing records and finding none with merit and having conducted its own independent review of those records, the Court finds

the hours expended in this case to be reasonable. This case lasted several years. The methods adopted by Plaintiff's counsel to limit any unnecessary overlap and the proactive "pruning" of the billings leads this Court to find that the hours and labor expended are reasonable.

### b. Novelty and Difficulty of the Question Raised

While the legal theories and principles underlying Title VII cases are well known to federal courts and federal practitioners, this case provided a complex twist to an otherwise well known path. The organizational structure that Defendant utilized in its disciplinary process provided that twist. Defendant utilized a tiered approach to discipline that changed the supervisor handling disciplinary proceedings depending on the severity of the offense alleged. Thus, an employee's day-to-day supervisor may not be the appropriate supervisor for purposes of Title VII considerations. That was the situation in this matter. This tiered approach to discipline utilized by Defendant provided for novel questions of law including whether a supervisor from Internal Affairs could qualify as a common supervisor for comparator purposes. The research conducted by the Parties and this Court independently showed that this issue has not been directly raised in many other courts. As such, the complexity of this case weighs in favor of the requested fees being reasonable.

### c. Skill Required

The skill required to adequately handle this case also weighs in favor of the requested fees being reasonable. This case required Plaintiff's counsel to simplify and communicate Defendant's organizational structure so that the Court could make a legal determination and the jury could make a factual determination regarding the adequacy of the evidence. Plaintiff's counsel did this with a high level of skill.

### d. Opportunity Costs

Plaintiff's counsel reports that due to the time commitment associated with representing Plaintiff, counsel did not accept several other cases. This weighs in favor of the requested fees being reasonable.

**e. Customary Fee for Like Work and Attorney's Fees in Similar Cases**

Plaintiff's lead counsel claims a fee of $450 per hour for her services. Mr. Littlejohn claims a fee of $250 per hour for his services. Ms. Sumter also claims a fee of $135 per hour for the work of the firm's paralegal and third-year law student intern. Defendant argues that Plaintiff's lead counsel's fee should be calculated at $400 rather than $450 due to an affidavit filed earlier in this case where Ms. Sumter claimed $400 per hour.

The Court will utilize the $450 rate to calculate Ms. Sumter's fee. Ms. Sumter filed the affidavit in question in December of 2017. At that time, Ms. Sumter did, in fact, charge $400 an hour. However, after almost two years passing, Ms. Sumter raised her hourly fee to the $450 mark. "We agree, therefore, that an appropriate adjustment for delay in payment - whether by the application of current rather than historic hourly rates or otherwise - is within the contemplation of the statute." *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) (internal footnotes and citations omitted); *see also Reaching Hearts International, Inc. v. Prince Georges County*, 478 F. App'x 54 (4th Cir. 2012) ("Our precedent is clear that, in the typical case, an appropriate way to compensate for a delay in payment for attorneys' fees is either to use the current hourly rates instead of historical ones. . .."). In this matter, the delay in payment lasted nearly three years from the moment the case was filed. An appropriate method to account for that delay according to the Supreme Court and the Fourth Circuit is to use counsel's current, rather than historical, rate. *Id.* That is the method the Court will use in this case. Based on the exhibits submitted by Plaintiff, the Court finds the $450

per hour rate claimed by Plaintiff's lead counsel to be an appropriate and reasonable rate in this matter.

To further solidify the reasonableness of this rate, Plaintiff submitted three different affidavits from attorneys within the Charlotte legal market in support of the Motion for Attorney's Fees. In those affidavits, each attorney stated that they were familiar with the billing rates in the Charlotte area, and $450 per hour for an attorney of Ms. Sumter's skill and experience fell within what is reasonable. One of the attorneys who submitted an affidavit, Mr. Joshua R. Van Kampen, charges the same billable rate despite being less experienced. Based upon the affidavits submitted and this Court's own awareness of prevailing market rates within the Charlotte legal community, the Court finds that the rates claimed in the billing records are very reasonable. Thus, this Court will utilize those rates to calculate the lodestar amount.

### f. Amount in Controversy and Results Obtained

The Court finds this factor weighs in favor of the requested fees being reasonable. The award in this case is the highest Title VII damages award this Court has ever presided over. The success achieved by Plaintiff's counsel suggests the hours expended were necessary and reasonable. *See also Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.").

### g. Other Factors

The Court will not directly discuss the other factors. However, the Court notes that the other factors were considered by the Court and found to be either irrelevant to the matter directly before the Court or neutral in determining what amount to award in this case.

### h. Calculation

Having determined that the number of hours claimed on the billing records is reasonable and having determined that the rates claimed are also reasonable, the Court must now calculate the lodestar amount to award in this case. The Court will award attorney's fees according to the following structure:

- Ms. Sumter: 658.05 hours x $450.00= $296,122.50;
- Mr. Littlejohn: 71.2 hours x $250.00= $17,800.00;
- Ms. Sumter's staff: 125 hours x $135.00= $16,875.00;
- Total award: $330,797.50.

### i. Costs

Plaintiff claimed a total of $22,045.57 in costs. The Court reviewed the costs and finds them to be reasonable and necessary to properly litigate this case. Defendant does not object to any of the costs. The Court finds no independent reason to reduce the award for costs. As such, the Court also awards the Plaintiff $22,045.57 in costs.

### III. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Attorney's Fees is **GRANTED**. Plaintiff is awarded $330,797.50 in attorney's fees and $22,045.57 in costs.

**SO ORDERED**.

Signed: August 19, 2019

Graham C. Mullen
United States District Judge